```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
JERMAINE STEWART and JACQUELINE          :
HILL STEWART,                            :
                                         :
                    Plaintiffs,          :         **MEMORANDUM AND ORDER**
                                         :         11-CV-3557 (DLI)(RER)
              -against-                  :
                                         :
TARGET CORPORATION, a/k/a TARGET         :
STORES and FUJITEC AMERICA, INC.,        :
                                         :
                    Defendants.          :
----------------------------------------------------------- :
TARGET CORPORATION,                      :
                                         :
              Third-Party Plaintiff,     :
                                         :
              -against-                  :
                                         :
COCA-COLA REFRESHMENTS USA, INC.         :
f/k/a COCA-COLA-ENTERPRISES, INC.,       :
                                         :
              Third-Party Defendant.     :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, U.S. District Judge:**

This action arises from personal injuries allegedly suffered by plaintiff Jermaine Stewart ("Stewart" or "Plaintiff") while delivering Coca-Cola products to a Target store located in Queens, New York. Stewart and his spouse have asserted claims against Target Corporation ("Target") and Fujitec America, Inc. ("Fujitec") for the incident. Target, in turn, has asserted third-party claims against Coca-Cola Refreshments USA, Inc. ("Coca-Cola"). Pursuant to Federal Rule of Civil Procedure 12(c), Coca-Cola moves for judgment on the pleadings and seeks dismissal of Target's Amended Third-Party Complaint. (Mem. of Law in Supp. of Mot. for J. on the Pleadings ("Coca-Cola Mem."), Docket Entry No. 35.) Target opposes the motion. (Mem. of Law in Opp'n to Mot. for J. on the Pleadings ("Target Mem."), Docket Entry No. 39.)

For the reasons set forth below, Coca-Cola's motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and Target's Amended Third-Party Complaint, which are assumed to be true for the purposes of this motion. On December 21, 2009, Stewart was injured at a Target store located in the Elmhurst neighborhood of Queens, New York when an overhead gate of a freight elevator struck him. (Compl. ¶¶ 6, 13, Docket Entry No. 1; Am. Third-Party Compl. ¶¶ 6, 9, Docket Entry No. 17.) Stewart was delivering Coca-Cola products to the Target store at the time of his injury. (Am. Third-Party Compl. ¶ 9.) Fujitec maintained and controlled the elevator gate in question. (Compl. ¶ 8.)

On June 2, 2011, Plaintiff filed a complaint in the Supreme Court of the State of New York, Queens County, asserting claims against Target and Fujitec for personal injuries suffered from the incident. Target timely removed the action to this Court, and, on November 29, 2011, Target filed the Amended Third-Party Complaint to assert third-party claims against Coca-Cola.

a. The January 2009 Agreement

Target asserts claims against Coca-Cola pursuant to a Conditions of Contract agreement dated January 12, 2009 (the "January 2009 Agreement") between Target, as "Purchaser," and Coca-Cola, as "Vendor." (Decl. of Mitchell Levine ("Levine Decl.") Ex. D, Docket Entry No. 36-4.) The January 2009 Agreement states that it "applies to and controls all agreements *related to the purchase of Goods* by [Target] from [Coca-Cola]" and is "binding with respect to all business conducted" between the companies. (Levin Decl. Ex. D at 2 (emphasis added).) Among other things, the January 2009 Agreement sets forth requirements with respect to the issuance, acceptance, and validity of purchase orders, the time and manner for shipment and inspection of Coca-Cola goods, the procedures for cancelling orders and shipments, and the

protocol for the disposition of rejected Coca-Cola goods. (Levin Decl. Ex. D at 2-10.)

The January 2009 Agreement also contains an indemnification clause, which provides, in relevant part, as follows:

> Vendor shall defend, indemnify and hold harmless Purchaser, its affiliates, and their respective directors, officers, shareholders, employees, contractors and agents (collectively, the "Purchaser Parties") from and against any liabilities, losses, investigations or inquiries, claims, suits, damages, costs and expenses (including without limitation, reasonable attorneys' fees and expenses (each a "Claim") arising out of or otherwise relating to the subject matter of the Contract, including any claim or demand of any kind or nature, which any buyer or user of Goods, or any other entity or person (including employees or agents of Vendor), whether in privity to Purchaser or not, may make against any of the Purchaser Parties, based upon or arising out of the manufacture, delivery, ticketing, labeling, packaging, placement, promotion, sale, or use of Goods, Vendor's performance or failure to perform as required by the Contract, Vendor's acts or omissions, or any of Vendor's representations or warranties contained in the Contract . . . .

(Levin Decl. Ex. D at 8.) In addition to the indemnification clause, the January 2009 Agreement provides that Coca-Cola must "maintain in full force and effect minimum insurance," defined to include workers' compensation and employer's liability insurance, as well as commercial general liability insurance that designates "'Target Corporation and its subsidiaries' as additional insured, including with respect to third party claims or actions brought directly against [Target] . . . and arising out of the Contract." (Levin Decl. Ex. D at 9.)

The January 2009 Agreement was signed by Mario E. Garnier, a Coca-Cola account executive for Coca-Cola's west business unit. (Levin Decl. Ex. D at 18.) The signature page of the January 2009 Agreement expressly provides that Garnier, as signatory, agrees that he: (1) is the "Administrator" for Coca-Cola's "Partner's Online" account with Target; (2) has the authority, as Administrator, to act on behalf of Cola-Cola; (3) is an employee of Coca-Cola and not a representative of it; and (4) is authorized to sign the document on behalf of Coca-Cola. (*Id.*)

b. The May 2009 Agreement

On May 29, 2009, approximately four months after the signing of the January 2009 Agreement, Coca-Cola sent Target a letter (the "May 2009 Agreement") to confirm the terms of a separate agreement between Coca-Cola and Target governing the advertising and marketing of Coca-Cola products in Target stores.[1] (Answer, Ex. A at 1-6, Docket Entry No. 20-1.) The May 2009 Agreement states, among other things, that Target has agreed to make a core set of Coca-Cola products available at its stores, run a minimum number of advertisement circulars at its stores, and place advertising displays and drink coolers in its stores featuring Coca-Cola products. (Answer, Ex. A at 2-4.) Additionally, in exchange for advertising and placing Coca-Cola products, the May 2009 Agreement states that Target would receive advertising funding and cooler placement fees. (Answer, Ex. A at 3-5.) Finally, the May 2009 Agreement further states that it "constitute[s] the final, complete and exclusive written expression of the intentions of the parties hereto with respect to the subject matter hereof and shall supersede all previous communications, representations, agreements, promises or statements, either oral or written, by or between either party concerning the activities described herein." (Answer, Ex. A at 5.) The May 2009 Agreement does not contain language requiring indemnification or procurement of insurance.

## DISCUSSION

**I.      Legal Standard**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the

---

[1] The May 2009 Agreement was sent by Jason Eastman, a national account executive for Coca-Cola, to Dan Epley, a senior buyer for Target. (Answer, Ex. A.)

pleadings." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To determine whether dismissal pursuant to Rule 12(b)(6) is appropriate, "a court must accept as true all [factual] allegations contained in a complaint" but need not accept "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted).

**II. Discussion**

    a.    The January 2009 Agreement

Coca-Cola seeks dismissal of the third-party action by arguing that the January 2009 Agreement is not binding on the company.[2] Coca-Cola contends that the May 2009 Agreement, which does not contain indemnification or insurance provisions, supersedes the January 2009 Agreement and the indemnification and insurance requirements contained therein. (Coca-Cola

---

[2] The parties have cited to New York and Minnesota law throughout their motion papers and make no objection to the application of the law of either jurisdiction. Thus, the Court deems the parties to have implicitly consented to apply New York law for purposes of this motion. *See, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) ("The parties' briefs assume that New York law controls, and such 'implied consent . . . is sufficient to establish choice of law.'") (quoting *Tehran–Berkeley Civil & Envtl. Eng'rs. v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)); *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 341 (S.D.N.Y. 2010) (applying New York law where plaintiff "cited to both New York and California law," but "made no objection to the application of New York law and [did] not brief[] the choice of law question").

Mem. at 6.) In the alternative, Coca-Cola argues that the January 2009 Agreement is not binding because it was not signed by an authorized Coca-Cola representative. (Coca-Cola Mem. at 7.) Both arguments are unavailing for the reasons detailed below.

As to supersession, "[u]nder New York law, [i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract." *Applied Energetics, Inc. v. NewOak Capital Mkts., LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (internal quotations and citation omitted). However, a subsequent contract not pertaining to the same subject matter will not supersede an earlier contract "unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *CreditSights, Inc. v. Ciasullo*, 2007 WL 943352, at *6-9 (S.D.N.Y. Mar. 29, 2007) (finding earlier agreement was not superseded by later agreements that did not involve same subject matter and served dissimilar purposes); (internal quotations and citation omitted); *Kreiss v. McCown De Leeuw & Co.*, 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999) (holding that later agreement, despite containing merger and integration clause, "only supersede[d] prior agreements concerning the same subject matter").

Here, under New York law, and by its express terms,[3] the May 2009 Agreement supersedes only those prior agreements between Coca-Cola and Target that concern the same subject matter. However, as Target notes in its opposition brief (and Coca-Cola does not refute in its reply), the subject matter of the May 2009 Agreement concerns the *marketing* and *advertising* of Coca-Cola products. It sets forth requirements for advertisement displays, marketing events, advertising funding, and placement fees. In contrast, the subject matter of the

---

[3] (*See* Answer, Ex. A at 5 ("This [May 2009 Agreement] shall constitute the final, complete and exclusive written expression of the intentions of the parties hereto *with respect to the subject matter hereof* and shall supersede all previous communications, representations, agreements, promises, or statements, either oral or written, by or between either party concerning *the activities described herein*.") (emphasis added).)

January 2009 Agreement concerns the *purchase* and *delivery* of Coca-Cola products. It sets forth requirements for the delivery and acceptance purchase orders, timeliness of shipment, cancellation of purchases, and disposition of rejected goods. As such, the May 2009 Agreement is dissimilar to the January 2009 Agreement in subject matter and purpose and does not provide a basis for dismissal of the third-party action.

As to authority to contract, "[u]nder New York law, an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Highland Capital Mgmt LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010). "Actual authority 'may be express or implied,' and in both cases 'exists only where the agent may reasonably infer from the words or conduct of the principal that the principal has consented to the agent's performance of a particular act.'" *Themis Capital, LLC v. Democratic Republic of Congo*, 2012 WL 3114732, at *4 (S.D.N.Y. July 26, 2012) (quoting *Minskoff v. Am. Express Travel Related Servs.*, 98 F.3d 703, 708 (2d Cir.1996)). "The question whether an agency relationship exists is highly factual . . . and can turn on a number of factors . . . ." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir.2006).

The Court finds that Target has pleaded facts sufficient to raise the reasonable inference that Garnier, a Coca-Cola account executive and signatory to the January 2009 Agreement, had authority to bind Coca-Cola. In particular, the signature page of the January 2009 Agreement, signed by Garnier, states that Garnier agreed and certified that he: (1) has the authority, as an account executive and administrator of Coca-Cola's online account with Target, to act on behalf of Cola-Cola; (2) is an employee of Coca-Cola and not a representative of it; and (3) is authorized to sign the document on behalf of Coca-Cola. Coca-Cola nonetheless argues that

Garnier does not have actual authority to bind Coca-Cola to the January 2009 Agreement by relying, in part, on an e-mail dated March 18, 2005, in which a representative of Coca-Cola informed a representative of Target that "only an officer of [Coca-Cola] is authorized" to consent to certain contractual obligations between the companies. (Coca-Cola Mem. at 2, 7; Aff. of Joel Celestin, Ex. 1, Docket Entry No. 34.) However, the March 18, 2005 e-mail, at best, presents a factual issue that cannot be resolved at the pleading stage in light of the other factual allegations.[4] *See Amusement Indus., Inc.*, 693 F. Supp. 2d at 345 ("New York courts have stated broadly that [w]here the circumstances alleged in the pleading raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency are issues for the jury.") (citations and internal quotations omitted).

    b.    Count One

Count One of the Amended Third-Party Complaint asserts a breach of contract claim, the substance of which provides as follows: "[The January 2009 Agreement] was in full force and effect on the day of Plaintiff's alleged accident on December 21, 2009. [Coca-Cola] breached said Contract. As a direct and proximate result of said breach, [Target] has been damaged." (Am. Third-Party Compl. ¶¶ 15-17 (paragraph numbers omitted).) Coca-Cola seeks dismissal of Count One of the Amended Third-Party Complaint because it alleges a breach of contract, but fails to identify the purported breach with specificity. (Coca-Cola Mem. at 16.) According to

---

[4] In arguing that Garnier does not have actual authority to bind Coca-Cola to the January 2009 Agreement, Coca-Cola also relies on factual affidavits it prepared and filed in connection with this motion. The Court declines to consider the affidavits at this juncture, as a motion for judgment on the pleadings "focuses on the pleadings themselves, and not on matters outside of the pleadings such as affidavits." *Air China Ltd. v. Nelson Li*, 2009 WL 857611, at *6 n.7 (S.D.N.Y. Mar. 31, 2009) (internal quotations and citation omitted).

Coca-Cola, to the extent that Count One asserts a breach of contract claim for failure to procure insurance, indemnify, or defend, it is duplicative of Counts Two and Three,[5] which already cover those claims. (*Id.*)

The Court finds that Count One, as pled, is conclusory, incomplete, and otherwise duplicative of the remaining counts in the Amended Third-Party Complaint. *See Paul v. Bank of Am. Corp.*, 2011 WL 684083, at *5 (E.D.N.Y. Feb. 16, 2011) ("In a fatal flaw, [plaintiff's] complaint fails to identify the specific contractual provision or provisions in the cardholder agreement allegedly breached by defendants and, as a result, the claims must be dismissed.") Dismissal is also warranted in light of Target's failure to specifically address this argument in its opposition papers. *See Harborview Value Masterfund, L.P. v. Freeline*, 2012 WL 612358, at *14 (S.D.N.Y. Feb. 23, 2012) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (citation and internal quotations omitted). Accordingly, Count One of the Amended Third-Party Complaint is dismissed.

   c.   Remaining Arguments

Coca-Cola raises two additional arguments, which the Court finds premature and declines to consider at this stage. First, Coca-Cola argues that it has no duty to indemnify or defend under the January 2009 Agreement because Stewart's injuries arise "out of Target's own negligence in the ownership, maintenance, control and possession of the subject elevator gate." (Coca-Cola Mem. at 7-14.) Second, Coca-Cola claims that Stewart's accident is "not based upon or arising out of [his] delivery of goods" to Target's store, and, therefore, it is outside of the scope of the

---

[5] Count Two asserts a claim on the basis that Coca-Cola is obligated "to defend, indemnify and hold harmless [Target]." (Am. Third-Party Compl. ¶ 23.) Count Three asserts a claim on the basis that Coca-Cola has failed to meet its obligation to "procure liability insurance naming [Target], among others, as additional insured." (Am. Third-Party Compl. ¶ 26.)

9

January 2009 Agreement. (Coca-Cola Mem. at 14-15.) However, the parties are still engaged in discovery, and there has been no factual showing or finding as to the negligence of the corporate parties or the circumstances of the accident. Accordingly, the Court declines to address these remaining arguments because they depend on facts and evidence outside of the pleadings. *See U.S. Underwriters Ins. Co. v. LCRF Enters., LLC*, 2012 WL 993502, at *4 (S.D.N.Y. Mar. 26, 2012) ("Because the evidence on this issue is conflicting and discovery has not been completed, it is premature at this time for this Court to determine whether the exclusions set forth in the insurance agreement relieve plaintiff of its duty to defend or indemnify defendant."); *Am. Auto. Ins. Co. v. Sec. Income Planners & Co.*, 847 F. Supp. 2d 454, 464 (E.D.N.Y. 2012) ("It is premature for the Court to determine whether or not [the insurer] has a duty to indemnify . . . because the issue of indemnification necessarily depends on facts that will be decided in the underlying state action.").

   d.  Plaintiff's Submission

Finally, the Court notes that Plaintiff has submitted a brief in response to Coca-Cola's motion in which Plaintiff requests leave to move to sever the Amended Third-Party Complaint, or, alternatively, to expedite discovery in the third-party action and bifurcate an expedited trial on the third-party claims. (Docket Entry No. 43.) Since filing this request, however, Plaintiff, along with Target, Coca-Cola, and Fujitec, have attended two status conferences with the magistrate judge and agreed to a joint case management plan. (*See* October 11, 2012 Minute Entry; January 9, 2013 Minute Entry; Amended Case Management Order, Docket Entry No. 53.) For this reason, the Court sees no reason to disturb the Amended Case Management Order at this time and denies Plaintiff's request without prejudice.

## CONCLUSION

For the reasons stated above, Coca-Cola's motion for judgment on the pleadings is granted to the extent that Count One of the Amended Third-Party Complaint is dismissed. The motion is otherwise denied in all respects.

SO ORDERED.

Dated: Brooklyn, New York
       March 20, 2013

                                              _____/s/_____
                                              DORA L. IRIZARRY
                                              United States District Judge